***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. EBI/Royal SunAlliance provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. An Industrial Commission Form 60 filed in this matter reflects total disability benefits to be paid of $203.73 per week.
5. At the time of the hearing before the Deputy Commissioner, plaintiff was not receiving total disability benefits, having returned to work with her former employer.
6. Subsequent to the hearing before the Deputy Commissioner, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2).
7. The issues to be determined are as follows:
a. Whether plaintiff is entitled to have an MRI at Defendants' expense to further aid diagnosis of the course of continuing left side, arm, shoulder, neck and head pain;
b. Whether defendants owe plaintiff five (5) weeks of total disability benefits for lost time following her latest surgical procedure;
c. Whether plaintiff should be reimbursed $400.00 paid to Dr. Todd Guthrie for an independent medical examination;
d. What was plaintiff's correct average weekly wage and corresponding compensation rate, and;
e. Whether plaintiff has reached maximum medical improvement?
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted a photograph, which was admitted into the record over defendants' objection, and marked as Plaintiff's Exhibit (1).
Also at the hearing before the Deputy Commissioner, defendants sought to have the question of whether plaintiff had reached maximum medical improvement added as an issue to be determined. Plaintiff objected to defendants' request, and sought to have the question of what is plaintiff's correct average weekly wage added as an issue to be determined. In turn, defendants objected to plaintiff's request, and submitted a Motion to Exclude Evidence Regarding Plaintiff's Average Weekly Wage. After careful consideration, and because each of these issues sought to be determined are relevant given the facts of this case, Defendants' Motion is HEREBY DENIED, and both parties' objections are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was seventy (70) years of age, with her date of birth being May 24, 1932. Plaintiff began working as a housekeeper for defendant-employer on February 24, 1998. In that capacity, plaintiff's duties included cleaning the rentals, front lobby, recreational rooms and a living room. These duties required plaintiff's to dust, sweep, mop, along with performing other general housekeeping duties.
2. On March 4, 2000, plaintiff sustained an admittedly compensable injury by accident while cleaning behind a bed when she became tangled in a telephone cord, and fell to the floor. The compensability of this injury was accepted by defendants through the filing of an Industrial Commission Form 60, pursuant to which plaintiff was paid total disability benefits at the rate of $203.73. As a result of her injury by accident, plaintiff sustained injuries to her head, left shoulder, right knee and left side.
3. Following her injury by accident, plaintiff sought treatment at Pardee Memorial Hospital and initially received treatment for her left shoulder pain. Plaintiff's shoulder x-rays revealed a comminuted impacted fracture for which she was referred to Dr. Werner C. Brooks. Plaintiff was first examined by Dr. Brooks on March 6, 2000, after which her fracture was set, and she was prescribed Demerol for pain. On March 17, 2000, plaintiff underwent an open reduction internal fixation of her left shoulder performed by Dr. Brooks.
4. During this early treatment period, the primary medical concern related to plaintiff's fractured left shoulder, however, no MRI of plaintiff's cervical region was taken. On June 20, 2000, due to continued left shoulder pain, Dr. Brooks ordered an MRI of plaintiff's left shoulder, which revealed post traumatic right shoulder impingement, partial thickening rotator cuff tear, and adhesive capsulitis. These findings necessitated that plaintiff undergo a second surgery performed by Dr. Brooks on July 14, 2000, which involved an arthroscopic decompression. On August 17, 2000, plaintiff was released by Dr. Brooks to return to restricted, light duty work, which defendant-employer was able to accommodate.
5. Plaintiff continued under the care of Dr. Brooks for her left shoulder until January 5, 2001, when Dr. Brooks opined that plaintiff had reached maximum medical improvement. Additionally, Dr. Brooks assigned permanent work restrictions of no overhead work or lifting more than twenty pounds, and assigned a ten percent (10%) permanent partial disability rating to plaintiff's left arm. On August 10, 2001, Dr. Brooks released plaintiff from his care for her right knee. Despite plaintiff's release in January 2001, on November 15, 2001, Dr. Brooks had to again perform surgery on plaintiff's left shoulder because of continuing pain. This procedure involved a subacromial decompression, a partial claviculcotomy along with removing a screw from her left shoulder.
6. Beginning November 15, 2001, plaintiff was medically excused from work for a period of five (5) weeks by Dr. Brooks as the result of her latest left shoulder procedure. Initially, defendants refused to pay plaintiff indemnity benefits for this period. However, at the hearing before the Deputy Commissioner, defendants were ordered to pay plaintiff total disability benefits for the period of November 15, 2001 through December 21, 2001, along with a ten percent (10%) penalty and interest. Defendants have complied with this Order, and paid plaintiff indemnity benefits at the rate of $203.73 per week as well the ten percent (10%) penalty and interest. Pursuant to the Order of the Deputy Commissioner, $89.63 of said interest was not due and payable at the time of its payment.
7. Following plaintiff's return to work in December 2001, she continued under the care of Dr. Brooks. On June 12, 2002, Dr. Brooks again opined that plaintiff had reached maximum medical improvement for her left shoulder, and assigned a ten percent (10%) permanent partial disability rating.
8. Despite Dr. Brooks' opinion regarding maximum medical improvement and his assigning of a rating on June 12, 2002, plaintiff continued to experience pain in her left shoulder and upper extremity. Plaintiff, however, was able to maintain her work schedule with defendant-employer, but did seek a second opinion from Dr. Todd Guthrie on August 13, 2002. On that date, plaintiff reported experiencing pain radiating up the left side of her neck from her left shoulder, along with left arm pain and left hand stiffness. Plaintiff also reported to Dr. Guthrie that she sustained an upper arm/shoulder fracture, was struck on the left side of her face and experienced neck pain at the time of her admittedly compensable injury by accident of March 4, 2000. With this history, and following his examination, Dr. Guthrie opined that plaintiff's cervical spine injury had not been completely and properly evaluated, and that she had nerve root and spinal cord compression causing abnormal reflexes in both upper extremities that were likely contributing to her stiffness, numbness and pain in her left arm.
9. Dr. Guthrie testified and opined that an MRI of plaintiff's cervical area would be necessary to properly evaluate her continuing, and chronic left regional pain syndrome, and that with her symptoms, it would be his standard practice to recommend such a procedure. Dr. Guthrie also opined that an MRI of the cervical area would be necessary before plaintiff could be released because she has not reached maximum medical improvement. At the time of the hearing before the Deputy Commissioner, plaintiff had not had an MRI or x-ray of her neck and cervical area, although she has undergone an MRI and x-rays of her left shoulder.
10. In this matter, defendants have highlighted the lack of references in plaintiff's medical records of complaints of neck pain as crucial evidence of a lack of causal relationship between those symptoms and her injury by accident. During his deposition, Dr. Guthrie addressed this contention and opined that the lack of neck pain complaints would not mean that plaintiff had not injured her neck because a person can have shoulder pain originating in the neck from a neck injury without having any actual neck pain. As for Dr. Brooks, his deposition testimony establishes that he was focused on treating plaintiff's left shoulder and right knee injuries, and was not concentrating on other areas, so absences in medical records of references by plaintiff of cervical problems is found by the undersigned to be of little, if any consequence.
11. The competent evidence in the record establishes that plaintiff's continuing symptoms and cervical spine injury as diagnosed by Dr. Guthrie are the direct and natural result of, and are causally related to her March 4, 2000 injury by accident. The credible evidence of record further establishes that due to the complicated nature of plaintiff's cervical injury plaintiff would medically benefit from having an MRI of that region, and to have her ongoing treatment be provided by Dr. Guthrie.
12. On March 4, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As the direct and natural result of, and causally related to her injury by accident, plaintiff sustained injuries to her cervical spine, left shoulder, left arm, right knee and the left side of her head.
13. Due to plaintiff's continuing symptoms subsequent to June 12, 2002 and Dr. Guthrie's opinions, Dr. Brooks' opinion that plaintiff reached maximum medical improvement for her left shoulder on that date with a ten percent (10%) permanent partial disability rating is given no weight.
14. At the time of the hearing before the Deputy Commissioner, plaintiff had not reached maximum medical improvement from the injuries she sustained as the result of her March 2, 2000 injury by accident.
15. Plaintiff received the indemnity compensation to which she would be entitled for the periods during which she was disabled and unable to earn wages as the result of her March 4, 2000 injury by accident. Plaintiff has also been paid by defendants the applicable ten percent (10%) penalty on all overdue benefits.
16. The issue of plaintiff's average weekly wage was raised at the hearing by plaintiff. However, no additional evidence on this issue has been presented. The record does contain an Industrial Commission Form 60, on which a compensation rate derived from an average weekly wage for plaintiff is reflected, and to which plaintiff had raised no objection prior to the hearing. Also, no motion regarding the filing of an Industrial Commission Form 22 Wage Chart was filed prior to or at the hearing. Accordingly, the undersigned finds that on March 4, 2000, plaintiff's average weekly wage was $305.60, yielding a compensation rate of $203.73.
17. When plaintiff reaches maximum medical improvement and a competent disability rating is assigned, defendants are entitled to a credit in the amount of $89.63 for interest paid when it was not due and payable against any permanent partial disability compensation to which plaintiff is entitled.
18. Defendants have conceded that indemnity payments to which plaintiff was entitled were not paid timely or in the manner prescribed under the Act. That defendants admitted this, and have since paid plaintiff the compensation to which she was due and a ten percent (10%) penalty does not diminish the fact that defendants' actions on this issue were based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment and as a direct result of a specific traumatic incident of the work assigned on March 4, 2000. As the direct and natural result of, and causally related to her injury by accident, plaintiff sustained injuries to her cervical spine, left shoulder, left arm, right knee and the left side of her head. N.C. Gen. Stat. § 97-2(6).
2. On March 4, 2000, plaintiff's average weekly wage was $305.60, yielding a compensation rate of $203.73. N.C. Gen. Stat. § 97-2(5).
3. As the result of her March 4, 2000 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred, to be incurred or as may be required to provide relief, effect a cure or lessen the period of disability including an MRI of her cervical spine, which is hereby approved, and ongoing treatment with Dr. Guthrie, who is approved as her authorized treating physician. N.C. Gen. Stat. §§ 97-25; 97-25.1.
4. When plaintiff reaches maximum medical improvement and a competent disability rating is assigned, defendants are entitled to a credit in the amount of $89.63 for "interest" paid when it was not due and payable against any permanent partial disability compensation to which plaintiff is entitled. N.C. Gen. Stat. §97-42.
5. Because defendants' actions relating to the non-payment of indemnity compensation to which plaintiff was due were based upon stubborn, unfounded litigiousness, plaintiff is entitled to the award of attorney's fees as a sanction. N.C. Gen. Stat. §97-88.1.
6. In view of the fact of defendants' appeal to the Full Commission for denial of benefits and medical compensation to the plaintiff, the Commission, in its discretion, assesses an attorney's fee for plaintiff's attorney against defendants in the amount of $750.00 as part of the bill of costs. N.C. Gen. Stat. §97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability as the result of her March 4, 2000 injury by accident, including an MRI of her cervical spine, which is hereby approved, and ongoing treatment with Dr. Guthrie, who is approved as her authorized treating physician.
2. A reasonable attorney's fee of twenty-five percent (25%) of the indemnity compensation which has been paid to plaintiff, and to which she may be entitled in the future is approved for counsel for plaintiff.
3. As a sanction pursuant to N.C. Gen. Stat. § 97-88.1, defendants shall pay the twenty-five percent (25%) attorney's fee approved for counsel for plaintiff based upon the indemnity compensation, which has been paid to plaintiff.
4. In addition to an attorney's fee for plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.1, an attorney's fee at the Full Commission level is assessed pursuant to N.C. Gen. Stat. §97-88 against defendants in the amount of $750.00 and is hereby awarded to plaintiff's attorney.
5. Defendants shall pay the costs of this action.
This the ___ day of February, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER